The Lessee of GEORGE SIMMONS *vs.* JOHN LOGAN, tenant in possession.

A. being seized in fee of an estate, joins in a deed of partition of the estate of his wife's father, and takes this estate, *inter alia*, as his wife's share of her father's estate—*held* that the heirs of A. are estopped from claiming A's. original title.

A deed of partition operates as an *estoppel* as to the parties *and* all *claiming under them.*

EJECTMENT, Verdict taken subject to the opinion of the court on a case stated.

The case stated set forth that William Woodcock and others by deed dated 12th March 1792, conveyed the land in question to Patrick O'Flinn, his heirs and assigns. That Patrick O'Flinn died intestate in July 1818, leaving a widow Sarah, and one child Elizabeth, the wife of Alexander Reynolds. After O'Flinn's death Reynolds and wife went into possession of the land, and built a house on it and lived there till their death. Upon their death Sarah O'Flinn took possession of the land claiming the same under a deed of parti-

tion executed by a certain Mary Huggins of the one part, and by Patrick O'Flinn and the said Sarah of the other part, bearing date the 13th September 1811. Sarah O'Flinn continued to receive the rents and profits of the land in dispute, and acted as the owner thereof until her death in December 1829. On the 26th June 1819 Alexander Reynolds and wife executed a mortgage of this land to George Simmons and Eli Sharpe. On this mortgage the land was sold by the sheriff and purchased by the said George Simmons the plff's. lessor, to whom a deed has been made by the sheriff. Logan the deft. is in possession, claiming under Sarah O'Flinn's title derived as aforesaid through the said deed of partition.

Extracts from the deed:

Indenture made 13th September 1811 between Patrick O'Flinn and Sarah his wife of the one part, and Mary Huggins, widow, of the other part. Here follows a recital that William Marshall deceased, was in his lifetime seized in fee of the several tracts and pieces of land mentioned in this deed *except the premises now in dispute,* designated in that deed as No. 7: that being so seized the said Wm. Marshall died having made a will; that by virtue of the said will the said Mary Huggins and Sarah O'Flinn, became seized of all the real estate of their father the said Wm. Marshall, "as co-parceners in fee simple." Then follows this recital: "And whereas during the existence of the said co-parcenary the said Patrick O'Flinn, by virtue of an indenture of bargain and sale duly executed under the hands and seals of Wm. Woodcock and Letitia Woodcock, Samuel Carswell and Margaret Carswell, for the consideration therein mentioned became lawfully seized as of fee, of and in a certain plantation or tract of land situate, &c." (described as No. 7, *being the land in question,*) "which said tract of land called herein No. 7, *hath ever since the purchase thereof as aforesaid, been held, considered and enjoyed by the aforesaid co-parceners as and for a part of the estate so as aforesaid held by them in co-parcenary.* And whereas, the aforesaid co-parceners have concluded and agreed to have, hold and enjoy their respective parts and shares of and in the before mentioned lands, tenements and hereditaments, with the appurtenances thenceforth in severalty; it is therefore covenanted, granted and agreed by and between the said Mary Huggins and Patrick O'Flinn and Sarah his wife for themselves, their heirs, executors and administrators respectively; and they do hereby covenant, grant and agree to and with each other, their heirs and assigns respectively, that a partition and division of the same shall be and is hereby made and determined in manner and form following, to wit: Firstly, that the said Mary Huggins, her heirs and assigns shall and may henceforth forever hold and enjoy in severalty, all that the following described parts or shares of the estates so as aforesaid held in co-parcenary which are hereby divided off, partitioned and allotted to her the said Mary Huggins, her heirs and assigns."

(Here follows a description of the premises allotted to M. Huggins,) "and the said Patrick O'Flinn and Sarah his wife have granted, released and confirmed, and by these presents do grant, release and confirm all the aforesaid four several lots, tracts or pieces of land and hereditaments with their appurtenances to the said Mary Hug-

gins, her heirs and assigns, as and for her the said Mary Huggins'
full share, part and proportion of in and to the estate so as aforesaid
heretofore held in co-parcenary.

(Then follow the *habendum* and *tenendum* in the usual form with
a covenant by O'Flinn and wife of special warranty against them-
selves and their heirs, &c.)

"Secondly. That the said Patrick O'Flinn and Sarah his wife,
their heirs and assigns shall and may from henceforth have, hold,
possess and enjoy in severalty all the following described shares or
parts of the real estates so as aforesaid held in co-parcenary which
are hereby divided, partitioned and allotted to the said Patrick
O'Flinn and Sarah his wife, their heirs and assigns."

(Here follows a description of the premises allotted to Patrick
O'Flinn and Sarah his wife, *in which is included the whole of the
tract No.* 7, being the premises in dispute, and the same which were
conveyed to Patrick O'Flinn by the aforesaid indenture of Wood-
cock and others bearing date March 12, 1792.)

"And the said Mary Huggins hath granted, released and confirm-
ed, and by these presents doth grant, release and confirm unto the
said Patrick O'Flinn and Sarah his wife, their heirs and assigns, the
above four several lots, tracts or pieces of land, tenements and here-
ditaments with their appurtenances, *as and for* the said Patrick
O'Flinn and Sarah his wife's *full share, part and proportion* of in
and to all the *real estate late of William Marshall, deceased*, and
so as aforesaid held in co-parcenary. To have and to hold the same
with every the hereditaments and appurtenances, to them the said
Patrick O'Flinn and Sarah his wife, their heirs and assigns, to his,
her and their only use, benefit and behoof forever."

(Then follows a covenant by Mary Huggins of special warranty,
&c.)

This deed was executed and acknowledged in due form. The
certificate of acknowledgment bears date 21st April 1812. The
deed was recorded September 2, 1812.

*Rogers* for the plff.

Stated the question to be whether the legal title of Patrick O'Flinn
was divested by this deed of partition.

*Booth* for deft.

The land was conveyed to Patrick O'Flinn by Woodcock and
others, but for the use of the heirs of Wm. Marshall, Mary Huggins
and Sarah O'Flinn. It was always held in co-parcenary as a part
of the estate of Marshall by his heirs until the deed of partition. It
is probable that it was bought out of the funds of that estate. In
the division of 1811 it is expressly included, and was held under
that division until the death of Capt. O'Flinn. He was a party to
this deed. Simmons took the mortgage and subsequently bought
the land with full notice of these facts, for the deed of partition was
recorded. Mrs. Reynolds was the only child of O'Flinn and wife.
The plff. takes title under the mortgage; he therefore takes the in-
terest of Reynolds and wife. But Reynolds and wife could not
claim against this deed of partition. The property having always
been held in common, recognized as such under the hand and seal
of O'Flinn, would not the court after such a lapse of time presume a

declaration of use by O'Flinn. Or does not this deed of partition itself amount to a declaration of use? Any words showing the intention will amount to a covenant to stand seized to a use. The consideration of a covenant to stand seized, as for natural love, &c., need not be expressed, if the court can collect it from the connexion of the parties, &c. 4 *Cruise* 134-5; 7 *Coke R.* 40; 4 *Cruise* 189; 2 *Black. R.* 1211.

The effect of such a construction would be to give an estate to Patrick O'Flinn and wife, and the longest liver, *per tout* and not *per my* and to their heirs, by force of the statute of uses. An estate being to husband and wife and the longer liver and the heirs of such survivor, the husband cannot alien. 2 *Cruise* 508-9-10.

*Wales*, on the same side.

First. A deed of partition is binding as relates to the lands of husband and wife without the intervention of a trustee, differing in this respect from other deeds where a trustee must be interposed in conveyances between husband and wife. The wife may contract in respect of her separate property. *Fitzherb.* 62; *Dig.* 89. Second. Where lands are held in trust, they are subject to the trust in the hands of the heirs of the trustee. The legal title to this land was not in Capt. O'Flinn after the deed of partition: that deed amounts to a declaration of use on his part. By our act of assembly the legal estate is made to accompany the use and pass with it. This declaration divested O'Flinn's legal title. The admission that this land was the separate property of Mrs. O'Flinn together with Mary Huggins as heirs of Wm. Marshall, makes O'Flinn in respect to it a tenant only in right of his wife. Third. The heirs of Patrick O'Flinn cannot recover the land against the deed of their ancestor. This deed covenants that the land shall be to O'Flinn and wife and their heirs. Yet the plff. is claiming under the heirs of O'Flinn in opposition to this deed. *Cowp.* 473; *do.* 201; 4 *Burr.* 2208; 8 *T. Rep.* 118, &c.; *Reeves Dom. Rel.* 89; 3 *East* 15.

What estate did the husband and wife take here? We consider it the estate of the wife, Mrs. O'Flinn; or it was an estate to O'Flinn and wife by *entirety*, going to the longest liver.

*Rogers*, for plff. in reply.

The rules and cases don't apply. No. 7, was no part of the estate of William Marshall. This is clear. It was conveyed to O'Flinn by Woodcock and others. The idea of a trust estate in this case is founded on the assumption that this property was bought with the funds of Marshall's estate, which does not appear, and which we deny. But if it had, the personal estate of Marshall, his wife's part of it, belonged to the husband absolutely, and the land purchased with it would equally belong to him. And in regard to Mrs. Huggins, if she could have any interest in the land so purchased, it is only an equity and is merged in the legal estate conveyed by her in the deed of partition. As to the covenants in this deed, Patrick O'Flinn makes no covenant in relation to No. 7, for that part is in fact conveyed by Mrs. Huggins. Here is no partition of lands between husband and wife. We submit then that the legal estate has

not been divested out of Patrick O'Flinn by this deed; and that the plff. is entitled to recover.

This case was argued at the conclusion of the term and held under advisement by the court.

*Mr. Justice Robinson* delivered the opinion of the court.

ROBINSON, J.—Mary Huggins and Sarah O'Flinn, being entitled to a fee simple estate in several tracts or parcels of land as devisees of Wm. Marshall their father, Patrick O'Flinn, the husband of Sarah, purchased a tract of land adjoining the same as conveyed to him in fee by deed dated the 12th day of March 1792. On the 13th day of September 1811, Patrick O'Flinn and Sarah his wife of the one part, and Mary Huggins of the other part, executed and acknowledged a deed of partition, called an indenture, to which the said Sarah was privately examined before the Chief Justice of the Supreme Court in proper form. In this deed it was recited that Mary Huggins and Sarah O'Flinn were seized of all the real estate of their father, as co-parceners in fee, and that the tract of land purchased by Patrick O'Flinn as aforesaid, had ever since the purchase thereof been held, considered and enjoyed by the said co-parceners as and for a part of the estate so as aforesaid held by them in co-parcenary. That the said co-parceners had concluded and agreed to have and hold their respective parts of the before mentioned lands and tenements in severalty: and it was therefore covenanted, granted and agreed by and between the said Mary Huggins and Patrick O'Flinn and Sarah his wife, for themselves and their heirs respectively, to and with each other, their heirs and assigns respectively, that a partition and division of the same should be, and was thereby made and determined in manner and form following, to wit: *First.* That the said Mary Huggins, her heirs and assigns, should and might thenceforth forever have and enjoy in severalty, the land and premises allotted to her; and, after describing the same, Patrick O'Flinn and Sarah his wife granted, released and confirmed the same to the said Mary Huggins, her heirs and assigns, as and for her full share and proportion of the estate so as aforesaid held in co-parcenary, with a covenant of special warranty against themselves, their heirs and assigns. *Secondly.* That Patrick O'Flinn and Sarah his wife, their heirs and assigns, should and might from thenceforth have, hold, possess and enjoy in severalty the lands and premises allotted to them; and, after describing the same, Mary Huggins granted, released and confirmed the same to them, their heirs and assigns, as and for their full share and proportion of the real estate late of Wm. Marshall deceased, and so as aforesaid held in co-parcenary, with a covenant of special warrantry against her and her heirs. The tract of land in dispute, was purchased by Patrick O'Flinn as before stated, and was included in the share allotted and conveyed to him and his wife as aforesaid. Patrick O'Flinn died intestate in the month of July 1818, leaving to survive him Sarah his wife, and one child named Elizabeth, then the wife of Alexander Reynolds. After his death Reynolds and wife entered on this tract of land; and, being in possession, on the 26th day of June 1819, executed and acknowledged a mortgage deed for the same to George Simmons and others, which was recorded in time. Reynolds built a dwelling house on

the same, and he and his wife continued to reside thereon until they died. After which Sarah O'Flinn claiming under the partition deed received the rents and profits, and acted as the owner thereof until her death, about the 8th December 1829. It was sold under the mortgage deed of Reynolds and wife by the sheriff of Newcastle county, and purchased by George Simmons the plff., and conveyed to him by the said sheriff.

It was insisted on behalf of the deft. that this deed of partition created a covenant by Patrick O'Flinn, to stand seized of the land in dispute to the use of his wife and Mary Huggins, and that the grant from Mary Huggins to Patrick O'Flinn and his wife passed her moiety in fee, and that the other moiety vested in Sarah O'Flinn by the covenant to stand seized. It is true that if Patrick O'Flinn was seized in fee, he was the only party to this deed who could pass the estate or interest in this land by such a mode of conveyance. But neither in the recital of this deed, nor any other part of it, are there any words of covenant or any that can be construed to be such on the part of O'Flinn. Neither does it appear that it was his intention to convey by deed any estate from himself. In all deeds of partition, it is said to be necessary that the parties should mutually convey to each other the several estates which they are to take in severalty under the partition. That was done by the parties to this deed, and the consideration was the mutual recompense each took in their respective shares of the estate divided, which cannot, consistently with the recital in the deed of this land, having been held as part of the co-parcenary estate of Mary and Sarah, be averred as a consideration for a covenant to stand seized contrary to the plain intention of the parties. As a covenant to stand seized, as insisted upon, it would have vested one moiety in Mary Huggins in fee, and the other in Sarah O'Flinn, and as Mary Huggins conveyed all her interest to Patrick O'Flinn and Sarah his wife in fee, then Patrick O'Flinn and Sarah his wife would have taken one moiety by entireties, which in the event of the death of Sarah before her husband would have belonged to him, whilst the other moiety would have belonged to the heirs of Sarah. This never could have been the intention of the parties. But this deed is the indenture of all the parties, by which Mary Huggins granted the land in dispute to Patrick O'Flinn and Sarah his wife, and their heirs and assigns: to have and to hold the same to them, their heirs and assigns, to his, her and their only use, benefit and behoof forever. Patrick O'Flinn and his wife accepted this grant, and they also accepted this tract of land as a portion of their share of the lands divided. No interest passed in this land from Mary Huggins by her conveyance, but it operates as an estoppel against all persons claiming under Patrick O'Flinn and his heirs. They are concluded by it from claiming the lands under the deed to him of the 12th of March 1792. This view of the case is strengthened by the recital, which admits that Patrick O'Flinn had purchased this land and had become seized thereof in fee by that deed. Thus if a man takes a lease by indenture of his own land, whereof he is in actual possession, this estops him to say the lessor hath nothing in the land, for by acceptance thereof by indenture he is as perfect a lessee as if the lessor had an absolute fee. 4 *Bac. Ab.*

187.   So if the disseizor by deed indented make a feoffment in fee whereunto livery of seizin is requisite, yet the indented deed shall not suffer the livery made to work a remitter to the disseizee, but shall estop him to claim his former estate; and the reason is, that the deed indented is the deed of both parties, and therefore the taker as well as the giver is concluded. *Co. Litt.* 363-6.   And if two make partition in a court of record, where one of them have no right, he thereby shall gain a moiety by estoppel. *Id.* 170 *b. note (3.)* In 3 *Johns. Rep.* 331, it was decided in New-York, that a partition deed operates as an estoppel as to the parties and all claiming under them.   Previous to the statute of frauds in England, partition between co-parceners might be made by parol, and the acceptance of an estate under such partition made an estoppel.   Thus if J. S. seized of land in fee had issue two daughters, Rose a bastard, and Ann born in wedlock, and J. S. died: Rose and Ann both entered and made partition: Ann and her heirs were concluded forever. *Co. Litt.* 170, *b*.   If such was the effect of a partition by parol, a partition made by a solemn deed makes the case much stronger.   Patrick O'Flinn and Sarah his wife being but one person in law, they did not take separate estates in this land but each the entirety; after his death the same so continued to belong to her, she being seized of the whole by estoppel.   For as was said by the court in the case of Trevivan against Lawrence, 1 *Salk.* 276, that where an estoppel works on the interest of the land it runs with it into whose hands soever the land comes and an ejectment is maintainable on the estoppel: it must of course be sufficient to defend in a case where the plff. must recover on the strength of his own title.

Judgment must therefore be entered for the defendant.

*Rogers* for plff.

*Booth* and *Wales* for deft.